UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| DAYTON PULMONARY REHABILITATION CENTER, INC., *et al.*, | Case No. 3:10-cv-128 |
| vs. | Judge Timothy S. Black |
| MERIDIAN HEALTH CARE GROUP INC., *et al.*, | |
| Defendants. | |

**ORDER DENYING PLAINTIFFS' MOTION IN LIMINE (DOC. 45)**

This civil case is before the Court on the Motion of Plaintiff, Dayton Pulmonary Rehabilitation Center, Inc. ("DPRC"), seeking an order in limine precluding admission of purported duplicate contracts pursuant to Fed. R. Evid. 1002. (Doc. 45). Defendant PulmoRehab LLC ("PulmoRehab") filed a Memorandum Contra DPRC's Motion. (Doc. 50). DPRC filed a Reply. (Doc. 57). The Motion is now ripe for decision.

This case involves a dispute over the payment provisions of contracts entered between two businesses in 2008. The parties' business relationship ultimately began in 2004, at which time the contract between the parties provided that DPRC would refer patients to Defendant Meridian Health Care Group, Inc. ("Meridian") for respiratory rehabilitation services, DPRC would bill the patients for Meridian's services, retain administrative expenses plus 30% of the remaining amount collected, and pay 70% to Meridian. Eventually, the 2004 agreement was extended to cover a total of three DPRC locations (Dayton, Centerville and Huber Heights).

In 2008, Meridian's president and chief-executive officer, Thomas Futch, sought to renegotiate the contract and change the payment structure from the 70/30 split. On or

around October 1, 2008, a representative of Meridian, Connie Hurt, allegedly approached Dr. Rajesh Patel, an owner of DPRC, while Dr. Patel was performing rounds in a Dayton hospital. Hurt requested that Dr. Patel sign a new contract at that time. While in the hospital, Dr. Patel allegedly made handwritten changes to the proposed contract and then signed the contract with those handwritten changes. Plaintiffs contend that among Dr. Patel's handwritten changes made to the contract were notations stating that "the financial arrangement 'should not change from the earlier agreement."

In the week or weeks following Dr. Patel's execution of the contract purportedly containing his handwritten changes, Futch sent a letter to Dr. Patel. (Doc. 45-5). That letter attached a copy of the contract "that incorporate[d] the changes that you [Dr. Patel] had marked on the Agreement last week[.]" (Doc. 45-5). In addition to the "changes" Dr. Patel "marked on the Agreement[,]" the contract attached to Futch's letter added the following language to Section 9.1 of the Agreement:

> *Not withstanding the above, either party may terminate the Agreement at any time on thirty (30) days advance written notice should financial conditions make the continued provision of the Services unfeasible.*

(Doc. 45-5) (this provision hereinafter referred to as "the 30 day notice provision").

Here, the contracts Plaintiffs seek to exclude all contain the 30 day notice provision in Section 9.1, the new payment arrangement, as well as Dr. Patel's signature. Plaintiffs contend that these purported "contracts" are not the original contracts, do not reflect the terms of the contracts, and, contrary to the face of the contracts, were not signed by Dr. Patel. Plaintiffs argue that Dr. Patel's signature appearing on each of the three purported

2008 contracts are merely photocopies of the same single signature Dr. Patel wrote on the contract containing his handwritten notes.

Plaintiffs' Motion in Limine seeks to exclude any copy of the 2008 contract that does not contain Dr. Patel's handwritten notations. Plaintiffs argue that the contract containing the handwritten notations is the best evidence of the parties' agreement, and that any other purported copy of the agreement should be excluded pursuant to the best evidence rule, *i.e.*, Fed. R. Evid. 1002.

The Federal Rules of Evidence state that "[t]o prove the content of a writing . . . the original writing . . . is required, except as otherwise provided in these rules or by Act of Congress." Fed. R. Evid. 1002. The Federal Rules do otherwise provide that duplicates are "admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." Fed. R. Evid. 1003. Where the purported original has been lost or destroyed, "[t]he original [writing] is not required, and other evidence of the contents of a writing . . . is admissible . . . unless the proponent lost or destroyed [all originals] in bad faith[.]"

Pursuant to Fed. R. Evid. 1008:

> When the admissibility of other evidence of contents of writings, recordings, or photographs under these rules depends upon the fulfillment of a condition of fact, the question whether the condition has been fulfilled is ordinarily for the court to determine in accordance with the provisions of rule 104.

Fed. R. Evid. 1008. Among the determinations to be made by "the court," in its role as gatekeeper under Rule 1008, include determining "whether nonproduction of an original

is excused pursuant to Fed. R. Evid. 1004" or whether all original copies have "been 'lost or destroyed[.]'" 5 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 10:39 (3d ed.) (citation omitted).

Other determinations made by the Court, in its role as gatekeeper, include "whether: (a) a proffered copy qualifies as a 'duplicate' under Fed. R. Evid. 1001 so as to be 'admissible to the same extent as an original' under Fed. R. Evid. 1003; [or] (b) a party has raised some issue relating to 'authenticity of the original' . . . under Fed. R. Evid. 1003[.]" *Id*. However, pursuant to Fed. R. Evid. 1008, questions as to "(a) whether the asserted writing ever existed, or (b) whether another writing . . . produced at the trial is the original, or (c) whether other evidence of contents correctly reflects the contents . . . *is for the trier of fact to determine* as in the case of other issues of fact." (Emphasis added).

Here, because this case will be tried to the bench, the Court will be making all of these determinations, if necessary. Therefore, regardless of whether the determination must be made in the Court's role as "the gatekeeper" or its role as "trier of fact," ultimately the Court must consider the purported 2008 contracts. The Court will make determinations regarding the admissibility and/or weight of the purported contracts after having the benefit hearing of all the evidence at trial. Accordingly, based on all of the foregoing, Plaintiffs' Motion in Limine (Doc. 45) is **DENIED**.

**IT IS SO ORDERED.**

Date: 9/26/11

Timothy S. Black
United States District Judge