UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DAYTON PULMONARY
REHABILITATION CENTER,
INC., *et al.*,

      Plaintiffs,

vs.

MERIDIAN HEALTHCARE
GROUP, INC., *et al.*,

      Defendants.

Case No. 3:10-cv-128

Judge Timothy S. Black

**DECISION AND ENTRY: (1) GRANTING IN PART AND DENYING IN PART DEFENDANT PULMOREHAB'S MOTION TO AMEND FINDINGS OF FACT, CONCLUSIONS OF LAW AND JUDGMENT; (2) DENYING PLAINTIFFS' MOTION FOR ATTORNEY FEES (DOC. 72); AND (3) GRANTING DEFENDANT PULMOREHAB'S MOTION FOR ATTORNEY FEES (DOC. 74)**

      This civil case is before the Court on three Motions:

(1)    Defendant PulmoRehab LLC's ("PulmoRehab") Motion to Amend Findings of Fact and Conclusions of Law (Doc. 73), to which Plaintiff Dayton Pulmonary Rehabilitation Center ("DPRC") filed a Memorandum in Opposition (Doc. 75) and PulmoRehab filed a Reply (Doc. 79);

(2)    DPRC's Motion for Attorney Fees and Costs (Doc. 72), to which PulmoRehab filed a Memorandum Contra (Doc. 77) and DPRC filed a Reply (Doc. 78); and

(3)    PulmoRehab's Motion for Attorney Fees and Costs, to which DPRC filed a Memorandum in Opposition (Doc. 76) and PulmoRehab filed a Reply (Doc. 80).

These Motions are now ripe for determination by the Court.

## I.  BACKGROUND

This case concerns a dispute between business entities that involves pulmonary services agreements ("PSAs") and leases between the parties.  The case proceeded to trial before the Court, after which the Court agreed with PulmoRehab's arguments regarding the applicable compensation structure governing the 2008 PSAs, found in favor of DPRC on its affirmative defense of accord and satisfaction, and found in favor of DPRC on its claims under the lease agreements.  The Court concluded that DPRC breached the 2008 PSAs and owes PulmoRehab $27,701.06, and that PulmoRehab breached two lease agreements and owed a total of $13,972.50.

## II.  MOTION TO AMEND

Defendant PulmoRehab moves the Court to amend the Findings of Fact and Conclusions of Law as well as the Court's Judgment.  Federal Rule of Civil Procedure 52(b) provides that, "[o]n a party's motion filed no later than 28 days after the entry of judgment, the court may amend its findings – or make additional findings – and may amend the judgment accordingly."  Rule 59(e) allows parties to file a motion to alter or amend a judgment "no later than 28 days after the entry of judgment."

Rule 52(b) motions do "not allow a party to 'relitigate old issues, to advance new theories, or to rehear the merits of a case."  *Leasure v. AA Advantage Forwarders*, No. 5:03-CV-181-TBR, 2009 WL 1883907, *1 (W.D. Ky. Jun. 30, 2009) (citing *Diebitz v. Arreola*, 834 F.Supp. 298 (E.D. Wis. 1993); *Renfro v. City of Emporia, Kansas*, 732

F.Supp. 1116 (D. Kan. 1990)).  Relief under Rule 52(b) is proper only upon a showing of a "'manifest error of fact or law' by the trial court, 'newly discovered evidence,' or 'a change in the law.'"  *Diebitz*, 834 F.Supp. at 302 (citations omitted); *see also Schroeder v. Drankiewicz*, No. 10-C-0232, 2012 WL 1593961 (E.D. Wis. May 4, 2012).

Motions to alter or amend a judgment pursuant to Rule 59(e) may be granted only: "(1) to correct a clear error of law; (2) to account for newly discovered evidence or an intervening change in the controlling law; or (3) to otherwise prevent manifest injustice." *CGH Transp. Inc. v. Quebecor World, Inc.*, 261 Fed. Appx. 817, 823 (6th Cir. 2008) (citing *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804 (6th Cir. 1999)); *see also Schellenberg v. Tp. of Bingham*, 436 Fed.Appx. 587, 598 (6th Cir. 2011).  Relief pursuant to Rule 59(e) is extraordinary and seldom granted because such relief contradicts notions of finality and repose.  *Wells Fargo Bank v. Daniels*, No. 1:05cv2573, 2007 WL 3104760, *1 (N.D. Ohio Oct. 22, 2007).  The Sixth Circuit has "repeatedly held that a Rule 59(e) motion 'does not permit parties to ... re-argue a case' and 'cannot be used to present new arguments that could have been raised prior to judgment.'"  *Schellenberg*, 436 Fed.Appx. at 598 (citations omitted).

### A.     Conversion from Corporation to Limited Liability Company

PulmoRehab first seeks to amend the findings of fact to include a finding that DPRC, Inc. converted to DPRC, LLC in February 2010.  PulmoRehab also seeks to amend the judgment to reflect that judgment is against DPRC, Inc. and DPRC, LLC,

jointly and severally.  DPRC does not contest the fact of the conversion from a corporation to LLC or the conclusion that DPRC, LLC is liable to PulmoRehab on the judgment.  Instead, DPRC argues that the amendment is unnecessary because DPRC, LLC's liability arises by operation of law under § 1705.391.

Ohio Rev. Code § 1705.391 generally provides that, upon conversion of a corporation to a limited liability company ("LLC"), the corporate entity continues in the LLC and that the corporate entity "ceases to exist."  In addition, the LLC possesses the assets, property, rights, privileges, etc. of the former corporate entity, as well as "[a]ll obligations belonging or due to the" former corporate entity.  Ohio Rev. Code § 1705.391(A)(3).  Further, "[a]ll the rights of creditors of the converting entity are preserved unimpaired, and all liens upon the property of the converting entity are preserved unimpaired."  Ohio Rev. Code § 1705.391(A)(4).

Here, PulmoRehab seeks an amended judgment against DPRC, Inc. and DPRC, LLC, jointly and severally.  However, pursuant to the Ohio statute, DPRC, LLC is DPRC, Inc., and it makes little sense to hold DPRC, Inc. and DPRC, LLC jointly and severally liable for a single debt when they are, as a matter of law, one single entity.  The Court will, however, **GRANT** PulmoRehab's Motion to Amend the Judgment in part to reflect that Judgment is against DPRC, LLC, formerly known as DPRC, Inc.

### B.  <u>Accord and Satisfaction</u>

Next, PulmoRehab moves the Court to amend the findings of fact and the ultimate judgment challenging the conclusion that DPRC's debt obligation between January 2009

-4-

through November 30, 2009 was satisfied via an accord and satisfaction.  This Court concluded that DPRC's tendering of a check in December 2009 for $33,822.77, and PulmoRehab's cashing of such check, amounted to an accord and satisfaction of the disputed debt owed from January 2009 through the end of November 30, 2009. PulmoRehab argues that DPRC sent the check to Meridian Healthcare, not PulmoRehab, and that Meridian Healthcare negotiated the check, not PulmoRehab.  PulmoRehab then argues that neither Meridian Healthcare nor Tom Futch acted on behalf of PulmoRehab and neither possessed authority to bind PulmoRehab to a settlement of the disputed debt.

The evidence PulmoRehab relies upon in support of this argument is evidence that was before the Court at trial and available for the parties to make arguments in their post-trial briefing.  However, in its post-trial briefs, PulmoRehab's argument opposing application of accord and satisfaction focused on the conspicuousness of the accord and whether the individual person processing the payment at Meridian Healthcare knew about the disputed debt at the time that person processed the payment.[1]

At no time before PulmoRehab's Motion to Amend did PulmoRehab argue that receipt of the check by Meridian Healthcare, as opposed to PulmoRehab or PulmoRehab d/b/a Meridian, had any significance in the accord and satisfaction analysis.  At no time before the Motion to Amend did PulmoRehab argue that Meridian Healthcare and Tom Futch lacked authority to settle disputes with DPRC on behalf of PulmoRehab.

---

[1]  The Court concluded that the check and the handwritten note were sent together directly to Tom Futch (Doc. 70, PAGEID 1598), who certainly knew of the dispute.

-5-

Even assuming the arguments now advanced by PulmoRehab were originally advanced before judgment, no clear error of law exists and no manifest injustice results. Contrary to PulmoRehab's assertions, the evidence presented in this case overwhelmingly demonstrates that Tom Futch, as either President and CEO of Meridian Healthcare or as PulmoRehab's Director of Pulmonary Rehabilitation, possessed actual authority (or at the very least, apparent authority) to act on behalf of and to bind PulmoRehab with regard to the 2008 PSAs.[2]

For instance, in June 2009, Tom Futch, in an email from a Meridian Healthcare email address (@meridianhg.com), representing himself as "President & CEO" of "Meridian Healthcare Group,"[3] stated that "we have reduced" the fee schedule between the parties retroactive to May 1, 2009, *i.e.*, a time period payable only to PulmoRehab. (PX-26, PAGEID T-2). The amendment to the 2008 PSAs memorializing this reduction was signed by Tom Futch, though apparently in his capacity as Director of Pulmonary Rehabilitation with "Meridian." (JX-18; see also Doc. 63, PAGEID 1291). There is no question that PulmoRehab ratified this act when it subsequently credited DPRC based upon retroactive application of the fee reduction. (Doc. 63, PAGEID 1454-55).

_____

[2] "The power of an agent to bind his principal may rest on real or actual authority conferred in fact by the principal or may be founded on apparent or ostensible authority arising when the principal allows or causes others to believe the agent possesses such authority, as where the principal knowingly permits the agent to assume such authority or where the principal by his actions or words holds the agent out as possessing it." *Tampa Sand & Material Co. v. Davis*, 125 So.2d 126, 127 (Fla. App. 1960).

[3] Connie Hurt, who also began working for PulmoRehab following its acquisition of Meridian Healthcare's assets, continued negotiating with DPRC under cover of a Meridian Healthcare email address (@meridianhg.com) and representing herself as Vice President of Operations for Meridian Healthcare as late as October 26, 2009. (PX-26, T-11).

In addition, following PulmoRehab's acquisition of Meridian Healthcare's assets, Tom Futch "personally wrote off [DPRC's] outstanding balance for 2008[,]" which necessarily included amounts payable to PulmoRehab for the second half of December 2008.  (Ex. PX-26, Bates No. T-24).  This write-off is evidenced by an email sent by Tom Futch representing himself as an employee of "Meridian," though using a Meridian Healthcare email address (@meridianhg.com).  (*Id*.)

Further, throughout 2009, and until February 2010, Meridian Healthcare accepted and processed payments from DPRC for PulmoRehab's services.  (Doc. 63, PAGEID 1449-1452).  All payments before February 2010 were accepted by Meridian Healthcare, forwarded to PulmoRehab, and applied toward PulmoRehab's account with DPRC. PulmoRehab rejected only the last payment sent to Meridian Healthcare by DPRC, and such rejection occurred only after the relationship between the parties completely soured and was terminated.  (Exhibit DX-30).

In light of PulmoRehab's failure to argue that Meridian Healthcare and/or Tom Futch lacked authority to bind PulmoRehab to an accord and satisfaction prior to issuance of judgment, and in light of overwhelming evidence of such authority in the record, PulmoRehab's Motion to this extent is **DENIED**.

### III.  ATTORNEY FEES AND COSTS

### A.  <u>Prevailing Party – 2008 Pulmonary Service Agreements</u>

In diversity cases, whether attorney fees should be awarded is a question governed by applicable state law.  *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240,

259-60 n.31 (1975).  The parties in this case do not dispute that the PSAs are governed by Florida law.

In Florida, parties generally must pay their own attorney fees in the absence of a statute or contractual provision providing for the award of such fees.  *Price v. Tyler*, 890 So.2d 246, 250 (Fla. 2004) (citations omitted).  Courts generally enforce contract provisions providing for the award of attorney fees to the prevailing party.  *Lashkajani v. Lashkajani*, 911 So.2d 1154, 1158 (Fla. 2005).  The prevailing party for purposes of attorney fee awards is "the party prevailing on the significant issues in the litigation." *Moritz v. Hoyt Enterprises, Inc.*, 604 So.2d 807, 810 (Fla. 1992).

Here, the 2008 PSAs provide that, "[i]n the event a party hereto brings any action against another party hereto to enforce or in the event of a breach of any of the provisions of this Agreement, the non-prevailing party shall pay the prevailing party's reasonable attorney's fees."  (Exhibits JX-8, JX-9).  The most significant issues presented in this case regarding enforcement and breach of the PSAs concerned the compensation structure agreed upon by the parties.  The accord and satisfaction defense became relevant only when DPRC's argument regarding the compensation structure failed.[4]

Further, trial before the Court demonstrated that the parties devoted a vast majority of their time and expense in litigating this case on the issue of the applicable

---

[4] Further, the accord and satisfaction defense sought to enforce a superceding agreement between the parties entered subsequent to the 2008 PSAs, not enforcement or breach of the 2008 PSAs themselves.

compensation structure.  Without such dispute, this lawsuit, most likely, never occurs.

Accordingly, PulmoRehab prevailed on the most significant issues regarding enforcement

and breach of the contract.  As a result, PulmoRehab is entitled to attorney fees pursuant

to the attorney fee provisions of the 2008 PSAs.

**B.      Reasonable Fees**

The party seeking an award of attorney fees "bears the burden of establishing

entitlement to an award and documenting the appropriate hours expended and hourly

rates."  *Graceland Fruit, Inc. v. KIC Chemicals, Inc.*, 320 Fed.Appx. 323, 328 (6th Cir.

2008) (citing *Hensley v. Eckerhart*, 461 U.S. 424 (1983)).  Further, the party seeking

attorney fees "should ... maintain billing time records in a manner that will enable a

reviewing court to identify distinct claims."  *Id.* (citing *Hensley*, 461 U.S. at 437).

PulmoRehab presents itemized billing statements between April 2010 and March

2012 evidencing 383.3 hours billed, for a total amount of $92,426.50 (an average hourly

rate of $241.13). With regard to the hourly rate presented, DPRC makes no objection

regarding the hourly rate.

The Court notes that an Ohio State Bar Association survey titled, "The Economics

of Law Practice in Ohio," supports the reasonableness of the fee charged by counsel.  *See*

The Economics of Law Practice in Ohio, Ohio State Bar Association (found at

https://www.ohiobar.org/General%20Resources/pub/2010_Economics_of_Law_Practice_

Study.pdf).  The survey shows that the median hourly rate of attorneys in the Greater

Columbus, Ohio area is $225 and that the hourly rate of the 75th percentile of attorneys in Greater Columbus is $275.  The median rate for attorneys in downtown Columbus is $250 per hour, while the 75th percentile is $325 per hour.  Based upon the experience of counsel and the skill presented throughout this litigation, the Court concludes that the hourly rate presented by counsel for PulmoRehab is more than reasonable.

With regard to the total hours presented, DPRC again makes no specific objection, and, in fact, presents an invoice showing that its attorneys and staff spent roughly the same number of hours litigating this case, *i.e.*, 392.7 hours.  (Doc. 72-1, PAGEID 1636). Upon review of the time entries submitted by the parties, the Court concludes that the total of hours presented by PulmoRehab appears reasonable on its face.  Accordingly, the "lodestar" amount of PulmoRehab's attorney fees equals $92,426.50.

DPRC argues that the total hours presented by PulmoRehab should be reduced because such time necessarily includes time billed unsuccessfully defending DPRC's breach of lease claims.  DPRC, however, does not object to any specific time entry presented by PulmoRehab.  The Court agrees that entries presented by PulmoRehab do not specify whether any task was performed in furtherance of PulmoRehab's contract claims or defending DPRC's lease claims.  Counsel for PulmoRehab states that counsel "spent a minuscule amount of time, if any, defending against Plaintiff's breach of lease claim."  (Doc. 74-1, PAGEID 1658).

The Court takes little issue with counsel's statement because, as determined above,

-10-

the parties overwhelmingly focused on the compensation structure dispute throughout this litigation and during trial.  In the Court's estimate, much less than five percent of evidence presented at trial focused solely on DPRC's lease claims.  Accordingly, the Court reduces the lodestar figure of $92,426.50 by two-and-a-half percent (2.5%) to account for work performed by PulmoRehab's counsel unsuccessfully defending the lease claims.  The result, then, is an amount of $90,115.84 the Court determines PulmoRehab expended in litigating claims arising from breach of the 2008 PSAs.[5]

DPRC further argues that counsel for PulmoRehab needlessly expended time between January 2011 and April 2011 dealing with successor liability issues and attempting to name DPRC LLC as a party to this case.  However, the Court concludes that such work was necessary to ensure that the proper entities were before the Court so that PulmoRehab was proceeding against the proper parties.  Thus, the Court declines to eliminate or reduce fees in this regard.

Finally, DPRC states that the Court can reduce an attorney fee award based upon the limited success of the party entitled to such fees.  "[A]ttorney's fee awards are to be proportional to the prevailing party's degree of success."  *Granzeier v. Middleton*, 173

---

[5] Plaintiff GYP Holdings ("GYP") argues that it is entitled to fees pursuant to the Centerville lease agreement.  PulmoRehab does not dispute that GYP is entitled to fees under the lease.  However, issues concerning the Centerville lease itself amounted to only a very small portion of the litigation.  Of the twenty-seven pages in Plaintiffs' Post-Trial Brief (Doc. 65), approximately one page dealt with the lease agreements.  Approximately one page of Plaintiffs' Reply Brief dealt specifically with the Centerville lease.  (Doc. 69).  A review of the billing entries submitted by Counsel for Plaintiffs reveals no descriptions for work specifically performed with regard to the Centerville lease.  Accordingly, the Court **DENIES** GYP's Motion for Attorney Fees under the Centerville lease because the Court is unable to sufficiently determine what amount was reasonably expended in furtherance of claims under that lease.

F.3d 568, 578 (6th Cir. 1999) (citing *Phelan v. Bell*, 8 F.3d 369 (6th Cir. 1993); *Hensley v. Eckerhart*, 461 U.S. 424 (1983)).  Where a prevailing party "has only limited success, the lodestar amount will be excessive 'even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith.'"  *Id*. (citing *Hensley*, 461 U.S. at 436);

Here, while PulmoRehab successfully presented the prevailing position on the overwhelmingly significant issue disputed in this litigation, *i.e.*, the compensation structure of the 2008 PSAs, DPRC's success on its affirmative defense of accord and satisfaction significantly reduced contract damages flowing from its breach.  PulmoRehab sought $115,049.06 in damages for DPRC's breach of the 2008 PSAs.  However, because DPRC prevailed on its affirmative defense, PulmoRehab's damages arising from DPRC's breach of the PSAs totaled only $27,701.06, less than a quarter of the damages sought by PulmoRehab on those claims.

Accordingly, because PulmoRehab achieved only limited success on its breach of contract claim, the Court reduces the $90,115.83 amount of fees expended in litigating those claims by seventy-five percent (75%) and awards PulmoRehab the remaining twenty-five percent, *i.e.*, a total of $22,528.96 in attorney fees.

### C.    Costs

This issue of costs shall be submitted to the Clerk pursuant to Fed. R. Civ. P. 54 and Local Rule 54.1.

## IV.  CONCLUSION

Based on all of the foregoing, PulmoRehab's Motion to Amend (Doc. 73) is

**GRANTED** in part and **DENIED** in part.  The Court will amend the judgment to reflect

that judgment in favor of PulmoRehab on the breach of the 2008 PSAs is against Dayton

Pulmonary Rehabilitation Center, LLC, formerly known as Dayton Pulmonary

Rehabilitation Center, Inc.

Further, the Court **DENIES** DPRC's Motion for Attorney Fees (Doc. 72) and

**GRANTS** PulmoRehab's Motion for Attorney Fees (Doc. 74).  PulmoRehab is entitled to

$22,528.96 in attorney fees from DPRC, LLC, formerly known as DPRC, Inc.

The Clerk will consider costs separately.

**IT IS SO ORDERED**.


Date:  8/14/12                                      *s/ Timothy S. Black*
                                                    Timothy S. Black
                                                    United States District Judge

-13-